## In re GRADING BLEDSOE HILL, BUCHANAN COUNTY, v. BLEDSOE, Appellant.

### Division Two, December 22, 1906.

1. **GRADING HIGHWAY: Act of 1903: Strict Requirements: Rules of Procedure.** The act of 1903 (Laws 1903, p. 148) empowering county courts to cause highways to be graded or otherwise improved or repaired, contemplates a procedure that invokes the powers of eminent domain, in that it contemplates the damaging of private property for public use, and prescribes methods for ascertaining those damages; therefore, the same strict rules of law applicable to proceedings wherein it is sought to take private property for public use are equally applicable to proceedings under that act. Hence, all the statutory requirements must be fully and strictly complied with, and unless that is done the judgment is void.

2. ———: ———: ———: **Commissioners: Recital of Qualifications.** Since that act requires that the commissioners appointed to assess the landowner's damages be disinterested freeholders, and also that a record of the proceedings be kept showing each step taken, the entire proceeding is void unless the record shows that the commissioners appointed were disinterested freeholders.

3. ———: ———: ———: ———: ———: **Recital in Report.** A recital in the affidavit of the commissioners attached to their report to the effect that they are freeholders of the county will not supply a defect in the record which does not state that they are disinterested freeholders. The court is required to appoint commissioners of designated qualifications, and their qualifications must be manifested by the record of the judge or court.

4. ———: ———: ———: **Must Be Sworn: Instructions.** Unless the record recites that the commissioners were sworn to ascertain and report the actual damages in each case separately under instructions given by the judge or court, the proceedings are invalid. An affidavit attached to the commissioners' report that they are freeholders is not sufficient. Besides, the record should embrace the instructions; it is not sufficient that it merely recite that instructions were filed.

5. ———: ———: **Constitutionality.** Where it is manifest that a judgment against the landowner cannot stand because of a failure to strictly comply with the provisions of the act, a determination of the constitutionality of the act is not necessary to a proper disposition of the case on appeal, and for that reason the constitutionality of said act is not determined or considered in this case.

Appeal from Buchanan Circuit Court.—*Hon. C. A. Mosman*, Judge.

REVERSED AND REMANDED.

*James W. Boyd* for appellant.

FOX, J.—This proceeding is brought to this court by appeal on the part of Henry Bledsoe, appellant, from a judgment rendered in the circuit court of Buchanan county, assessing damages for injury to appellant's land abutting upon the public road sought to be graded by this proceeding. This proceeding is predicated upon an act of the General Assembly approved March 26, 1903 (Laws 1903, p. 148), to empower county courts to grade public roads and provide a method for paying damages caused by said grading. Sections 1, 2, 3, 4, 5, 6 and 7 of this act provide:

"Sec. 1. Any county court in this State, by an order of record, shall have power to cause to be graded or otherwise improved or repaired, all public highways or parts thereof within such county, at such time, to such extent and of such dimensions as shall be provided by any such order entered of record.

"Sec. 2. When any county court in this State shall make an order of record to grade any highway or parts thereof within such county, the county clerk of any such county shall, at the cost of the county, cause to be published a copy of said order, within twenty days from the making thereof, in some newspaper printed and published in such county, to be designated by such county court in its said order, once a week for four successive weeks.

"Sec. 3. Within thirty days from the making of any such order, the county surveyor shall furnish the county court, or the clerk thereof, a map or plat containing a correct description of the several lots or parcels of private property abutting upon the public road proposed to be graded, together with a profile of the said public road proposed to be graded, which profile shall show the natural surface of said public road and the extent of the grading proposed to be done.

"Sec. 4. The proceedings hereinafter provided for may be heard by the circuit court in term time, or by a judge thereof in vacation, and a complete record thereof shall be kept in either case.

"Sec. 5. Whenever the county court or the clerk thereof shall cause to be filed a certified copy of such order and the proof of the publication thereof in the circuit court or with the clerk thereof, such court or judge thereof shall fix a day and place for assessing the damages to arise from the proposed grading, and shall make an order reciting the order of the county court, and said order shall be directed to all persons to whom it may concern, without naming them, notifying them of the places and the day fixed for the ascertaining of damages to arise from such grading. A copy of such order shall be published in some newspaper to be designated by the court and of general circulation, printed and published in the county, at least once a week, for four successive weeks, the last inser-

tion to be not more than one week prior to the date fixed for said hearing; said cause may be continued or postponed from time to time. No notice of said proceedings shall be necessary, except as herein provided, and proof of publication of such order may be made by the affidavit of any editor or publisher of such newspaper. On or before the day set for the hearing, any person claiming damages by reason of the proposed grading may file or cause to be filed with the clerk of said court a description of the property claimed to be damaged, and the interest of the claimant therein. The clerk shall note the filing of every such claim as a part of the record in said cause.

"Sec. 6. On the day set for hearing, if the copy of the order has been duly published as herein required, the judge or court shall appoint and cause to be empaneled a board of three commissioners, who shall be distinterested freeholders, and allowed the same fees as jurors are allowed for their services.

"Sec. 7. The commissioners provided for in the preceding section shall be sworn to ascertain and report the actual damages or just compensation to be paid in each case separately under such instructions as shall, after hearing the parties, be given them by the judge or court. Parties interested may submit proof to the commissioners, and said commissioners shall examine, personally, each piece of property described on such map or plat, and all property claimed to be damaged by such proposed grading. The commissioners shall ascertain and state in their report or verdict the amount of actual damages to each piece of private property that will be damaged by reason of the proposed grading, having due regard to, and making just allowance for, all benefits to. such piece of property from such grading, and when the damages to any piece of property do not exceed the benefit thereto from the proposed grading, the commissioners shall not report any allowance of damage

to such piece. If a majority of the commission-
ers cannot agree, the judge or court may dis-
charge them, and may proceed to impanel another
board, but the order to impanel a new board of
commissioners must be made on the day of discharging
any board of commissioners, and must name the time
and place for impaneling the new board.''

Section 8 makes provisions for the verdict of the
board of commissioners being signed by a majority
of them and the delivery of such verdict or report to
the judge or court on the day fixed for such report,
and this report may be set aside by the judge or court
upon his or its own motion, or on the motion of the
county, or for good cause upon the motion of any party
interested in the proceeding; and then follows a pro-
vision for the appointment of a new board to perform
the duties prescribed by this article and the fixing of
the time and place of impaneling of a new board and
the rehearing of the whole matter. Section 9 provides
that the verdict or report shall, unless set aside, be
affirmed by the court and judgment entered thereon;
that the county pay the damages assessed therein.
Then follows a provision for an appeal by any party
aggrieved by the judgment by filing an affidavit as is
required in appealing civil cases. It is also provided
by section 9 that in case of appeal the judgment shall
stand suspended until the appeal is disposed of, and
the clerk of the appellate court is required to put the
case on docket for hearing at the next term of that
court after the appeal is allowed. Following this is a
provision in the same section that no error or defect
not affecting the rights of the parties shall work a
reversal of the judgment; and that the proceedings in
the case shall in all respects not provided for in this
act conform as near as may be to the practice and pro-
cedure in civil cases.

The abstract of record filed by appellant, which is

now before us, and it is the only abstract filed in this cause, undertakes to recite what occurred in respect to this proceeding in the circuit court of Buchanan county. We deem it unnecessary to burden this opinion with a reproduction of the entire record, but shall be content with a substantial reference to what the record contains.

The first entry in the circuit court is the order of publication, which recites that: "Be it remembered, on this 22d day of October, 1903, the same being the 26th day of the regular September term of this court, the following proceedings were had in the matter of grading Bledsoe Hill. It appearing to this court that heretofore, to-wit, on the 5th day of September, 1903, the county court of Buchanan county, Missouri, caused to be filed with the clerk of this court, during the vacation thereof, a certified copy of the order made by said county court in the matter of the grading of Bledsoe Hill, together with the proof of publication of said order of said county court." Then follows a reproduction of the order made by the county court on the 6th day of August, 1903, in the matter of the grading of two hills on the public highway at H. Bledsoe's farm, in pursuance of the provisions of sections 1, 2 and 3 of the statute as herein indicated. In the order by the county court, which was embraced in the order of publication, there was a provision fixing the 23d day of November, 1903, as the day for ascertaining the damages, if any, to arise from grading the public road, or from that portion of it ordered to be graded by the order of the county court, and the place fixed for the hearing of any person interested therein was in Division No. 1 if the court was in session and if not in session before the Hon. A. M. Woodson, judge of said court, in his chambers in the courthouse in St. Joseph, Buchanan county, Missouri, and the further provision that at that time and place commissioners would be ap-

pointed as provided by law for the purpose of ascertaining and reporting the actual damages or just compensation, if any, on account of the grading of the public road at the place designated in the order. On the 23d day of November, 1903, the record discloses that proof of the order of publication, as herein indicated, was made, and that at that time the appellant in this cause, Henry Bledsoe, filed a motion to dismiss this proceeding. There is no necessity for incorporating in this opinion the numerous grounds assigned in the motion why this proceeding could not be maintained. It is sufficient to say that such motion embraced every conceivable ground that could possibly be urged why the proceeding could not be maintained. It challenged the regularity of the proceeding as provided by the statute, as well as the jurisdiction of the court and the judge to proceed in the determination of the cause, and finally assails the constitutionality of the law upon which the proceeding is predicated. On the 2d day of December, 1903, the record discloses that the motion heretofore filed to dismiss was submitted to the court, and by the court continued, and at the same time, by agreement of parties, defendant, Henry Bledsoe, has leave to file his claim for damages, which was accordingly done, and it was agreed that no point was to be made upon the question of time for the filing of same. The appellant, Henry Bledsoe, prefaced his claim for damages in the following language:

"Now comes Henry Bledsoe, for the purpose of this statement alone, and for the purpose of renewing and stating and restating the matters and things set forth in his motion filed in this court in this case during the last term hereof, and for the purpose of renewing said motion, and for no other purpose. He here now, without waiving or intending to waive any of the matters and things set forth in his said motion filed as herein above stated, which said motion has not been

determined, and which he here now renews.'' Following this he states that he is the owner and has been the owner in fee simple for many years of the tract of land which abuts the public road sought to be graded in this proceeding. The land is then fully described and the statement is then closed with the claim that if said road is graded in accordance with the plans and under the conditions and to the extent stated in the proceeding in this cause said lands and said Henry Bledsoe as the owner thereof will be damaged in the sum of $1,500, and that no benefit whatever in any shape, manner or form will accrue to the owner thereof, Henry Bledsoe, in consequence of grading or cutting down said public highway. Following this disclosure of the record are the following recitals:

"And no other person appearing herein to claim damages and C. F. Strop appearing in behalf of the county court of Buchanan county, Missouri, by agreement of parties and for good cause shown, this proceeding is continued until Friday, November 27, 1903.

"Now here the court appoints John H. Carey and John L. Leonard and W. D. Rusk as commissioners to assess damages and award benefits.

"Now here the court files his instructions to the said commissioners as to their duties herein.

"And afterwards, on the 8th day of December, 1903, the same being the 51st day of the September, 1903, term of this court, the further proceedings, among others, were had and entered of record, to-wit:

"Comes now William D. Rusk, who was heretofore appointed as a commissioner herein, and declines to serve as said commissioner. It is therefore ordered that Benjamin J. Woodson be, and he is hereby appointed in his stead to act as one of said commissioners herein.

"And afterwards, on the 1st day of March, 1904, the same being the 44th day of the regular January,

1904, term of this court, the further proceedings, among others, were had and entered of record, to-wit:

"Now here this cause is by the court continued, and the time for filing the report of the commissioners is extended to during the May term of this court.

"And afterwards, on the 10th day of July, 1905, the same being the 50th day of the regular May, 1905, term of this court, the further proceedings were had and entered of record, to-wit:

"Come now the commissioners, heretofore appointed herein, and file their report, which is as follows: '

"We, John L. Leonard, John H. Carey and Ben J. Woodson, commissioners appointed in this proceeding by the court to review the premises of Henry Bledsoe, and ascertain and assess whatever damages, if any, he will sustain by the proposed change of the grade of the public road in front of the premises of said Bledsoe, fronting and adjoining the same in sections thirty and thirty-one, township fifty-five, range thirty-five, in Buchanan county, Missouri, said premises being more particularly described as thirty acres off of the south end of the southeast quarter of the southeast quarter of section thirty, and twenty-five and one-half acres off of the north end of the southeast quarter of section thirty-one, all in said township fifty-five, range thirty-five, in Buchanan county, Missouri, upon our oath state:

"That after first giving notice to all parties intered, including Henry Bledsoe and James W. Boyd, his attorney of record herein, of the time when we would view the road proposed to be graded and also the aforesaid premises of Henry Bledsoe, we went to and viewed said road and premises, said Henry Bledsoe being at the time present, and we examined the profile made by the surveyor of Buchanan county, Missouri, showing the proposed grading of said road in front of said Bledsoe property, and we further report that afterwards at the court house in the city of Saint Joseph,

after giving notice to all parties interested, including
Henry Bledsoe, who appeared at said hearing in per-
son, and also James W. Boyd, his attorney of record,
who appeared for said Henry Bledsoe at said hearing,
we heard all of the parties and all testimony adduced
by any of them as to the extent of the damage sustain-
ed by said Bledsoe on account of grading said road as
proposed in front of said premises, and after said
hearing the commissioners have unanimously agreed
that the said premises of Henry Bledsoe will be dam-
aged, if said road in front thereof is graded as it is pro-
posed to be graded, to the extent of three hundred and
seventy-five dollars.

"BEN WOODSON.

JOHN L. LEONARD.

J. H. CAREY.

"John L. Leonard, John H. Carey and Ben J.
Woodson upon their oath state that they are resident
freeholders of Buchanan county, Missouri, and that
the foregoing is their report as the commissioners ap-
pointed in the above proceeding.

"J. H. CAREY.

JOHN L. LEONARD.

BEN WOODSON.

"Subscribed and sworn to before me this 20th day
of June, 1905.

"My commission expires March 21, 1909.

"SUSAN LAWRENCE,

Notary Public."

It is further disclosed by the record that upon the
filing of the verdict or report of the commission-
ers, as herein indicated, the appellant Henry Bled-
soe, duly filed his exceptions to the report of the com-
missioners. We shall not undertake to reproduce the
numerous grounds alleged in the exceptions to the re-
port for the setting aside of the verdict and report of
the commissioners. It is sufficient to say that the ex-

ceptions challenged the jurisdiction of the court and the judge thereof to entertain this proceeding against appellant, Bledsoe. It further assigns the failure of the court to comply with the provisions of the statute during the progress of this proceeding, and that such report was returned without any authority of law and without any instructions by the court to the commissioners, as provided by the statute concerning the manner of discharging their duties in assessing the damages suffered by reason of the grading of the property designated in the order of the county court, and finally the exceptions as filed challenged the constitutionality of the statute upon which this proceeding is based, alleging that it is unconstitutional and void and in violation of sections 23 and 30 of article 2 of the Constitution of this State. There were numerous other grounds embraced in the exceptions, among them the inadequacy of the amount of damages assessed by the commissioners.

Testimony was heard by the court of numerous witnesses in support of the finding and assessment of damages by the commissioners, as well as against the correctness of their finding and assessment of such damages. There was also a record and judgment introduced in evidence of an injunction proceeding commenced in 1902, concerning the grading of Bledsoe Hill, which was sought to be done under the law in force at that time, but as this proceeding is predicated upon an act of the General Assembly enacted subsequent to that proceeding, we deem the nature and character of that injunction proceeding as immaterial upon the questions involved in this proceeding, therefore there is no necessity for stating the nature and character of the injunction suit or the judgment rendered in pursuance of it. At the close of the evidence introduced upon the exceptions to the report of the commissioners filed by appellant, the court overruled and

refused to sustain the said exceptions of the appellant or any of them, to which action of the court appellant properly preserved his objections and exceptions. The court then overruled the motion which had been previously filed to dismiss this proceeding and entered a judgment confirming and approving the report of the commissioners, to which action of the court the appellant objected and excepted at the time. From this judgment Henry Bledsoe, the appellant herein, prosecuted his appeal, and the record is now before us for consideration.

OPINION.

This cause was submitted to this court on October 12, 1906, upon the stipulation that respondent should have 20 days in which to file record, brief and argument, and that said cause should stand submitted on briefs, and that appellant should have 15 days after the expiration of that time in which to file reply brief. Upon this stipulation it is manifest that the time has long since expired for the filing of any additional abstract of record or brief; hence this cause is now before us upon the abstract of record and brief as filed by the appellant.

The record discloses the assignment of numerous errors as grounds for the reversal of the judgment rendered in this proceeding. The brief of learned counsel for appellant fully treats of the propositions disclosed by the record. It is earnestly insisted that the record required to be kept by the court in this proceeding in pursuance of the provisions of section 4 of the act upon which the proceeding is predicated, fails to disclose such a compliance with the requirements of the law necessary to support the judgment. Finally it is urged that the act of the General Assembly upon which this proceeding is based is unconstitutional and void,

for the reason that it is in conflict with certain provisions of the Constitution of this State.

We have in the statement of this cause pointed out the recitals of the record undertaking to comply with the provisions of the statute which authorize the institution of this proceeding to accomplish the work and purposes designated by such statute, and upon the disclosures of such record the constitutionality of the act upon which this proceeding is based may be conceded (however, upon that question we express no opinion), and still a careful analysis of the recitals in such record makes it manifest that they are insufficient to support the judgment rendered in this cause.   It is clear that in this proceeding authorized under the provisions of this act the exercise of the power of eminent domain must be invoked.   While, technically speaking, it does not condemn private property for public use, yet damaging and injuring property for the betterment of public use are in effect the taking of part of the value of private property for public use; therefore we are of the opinion that there can be no dispute upon the proposition that the same strict rules of law applicable to a proceeding wherein it is sought to take private property for public use are equally applicable to the proceeding in the case at bar.   It has been the uniform expression of this court that where private property is sought to be taken against the will of the owner under statutory authority all the statutory requirements must be fully and strictly complied with.   Burgess, J., in Williams v. Kirby, 169 Mo. 622, thus gave the expression of the rulings of this court upon that proposition.   He said:   "It has been uniformly held by this court, in proceedings to condemn private property for public use, that unless it affirmatively appear upon the face of the proceedings that every essential prerequisite of the statute conferring the authority has been complied with, such proceedings will be void.   [Anderson v. Pemberton, 89

Mo. 61; Whitely v. Platte County, 73 Mo. 30; Jefferson County v. Cowan, 54 Mo. 234; Zimmerman v. Snowden, 88 Mo. 218.]'' The rule applicable to this proposition has been nowhere more clearly stated than in Leavitt v. Eastman, 77 Maine 117. The Supreme Court of that State, in discussing this question, said: ''It is common learning that where private property is sought to be taken against the will of the owner, under statute authority, all the statute requirements must be fully and strictly complied with. In the procedure no step, however unimportant, seemingly, must be omitted, nor will the substitution of other steps, in the place of those named in the statute, be sufficient. To deprive the citizen of his property requires the whole statute, and nothing in the place of the statute.''

It, therefore, follows that, in harmony with the well-settled rules of law as herein pointed out, it is essential in order to support a valid judgment in this proceeding that it must affirmatively appear upon the face of the record that every essential prerequisite of the statute conferring authority to take any part of the value of the appellant's private property for public use has been complied with. This leads us to the consideration of the recitals in the records which undertake to comply with the provisions of the statute. In the first place, section 4 of the act authorizing the institution of this proceeding, fully recognizes the rules of law applicable to proceedings which seek to take private property for public use, that is, that it is essential for the records to disclose a strict compliance with the provisions of the statute; therefore it provides in express terms that, in the hearing of such proceedings by the circuit court in term time, or by the judge thereof in vacation, a complete record of the proceedings in each case shall be kept. In other words, this section contemplates that a record shall be kept of the proceeding, showing each and every step taken in it, to the end

that it may disclose upon its face a strict compliance with the provisions of the statute. The abstract of record before us, as presented by appellant, and there is no other filed challenging the correctness of the recitals in such abstract, fails to disclose a compliance with section 6 of the act of the General Assembly now under consideration. This section requires the judge or court to appoint and cause to be empaneled a board of three commissioners, who shall be disinterested freeholders. The record fails to show the appointment of commissioners possessed of the qualifications required by the statute. The recital in the record is simply this: "Now here the court appoints John H. Carey, John L. Leonard and W. D. Rusk as commissioners to assess damages and award benefits." The record subsequently discloses that W. D. Rusk declined to serve and it was therefore ordered "that Benjamin J. Woodson be and he is hereby appointed to act in his stead as one of said commissioners herein." It will be observed that there is an entire absence from the recitals in the record that the three commissioners were either disinterested or that they were freeholders, both of which were essential to their qualifications to act as commissioners in assessing the damages in this proceeding. The appellant, Henry Bledsoe, had the right to have the inquiry of damages to his land made by commissioners possessed of the qualifications provided for in the statute, and it is essential to the validity of this proceeding that the record disclose the appointment of commissioners possessed of such qualifications. It may be argued that the affidavit of the commissioners to the report filed in this cause in which they state that they are resident freeholders of Buchanan county, Missouri, would supply such defect. We are of the opinion that it does not do so. It was the province of the court or judge to appoint commissioners with the requisite qualifications designated by the statute, and the ap-

pointment of such commissioners possessed of the requisite qualifications must be manifested by the record of the judge or court hearing the proceeding, and the mere filing of an affidavit by the commissioners stating the requisite qualifications falls far short of complying with the statute which requires the judgment of the court or the judge as to the qualifications of such commissioners, and the evidencing of such judgment by an entry of record.

Again, an examination of the record discloses a failure to comply with section 7 of the act under which this proceeding is sought to be maintained. Section 7 expressly provides that the commissioners as provided for in section 6 shall be sworn to ascertain and report the actual damages or just compensation to be paid in each case separately under such instructions as shall be given them by the judge or court. There is an entire absence in this record of. any recital that the commissioners to asses the damages in this proceeding were sworn and instructed in accordance with section 7. The affidavit attached to the report of the commissioners is by no means a compliance with that section. That was simply an affidavit that they are resident freeholders of Buchanan County, Missouri, and that the foregoing is their report as the commissioners appointed in the above proceeding. If we are to longer follow that just and well-recognized rule as herein pointed out, that, where it is sought to take private property for public use under the provisions of a statute, it must affirmatively appear upon the face of the record that every prerequisite of the statute has been complied with, then we take it that it is essential in this proceeding under the provisions of the statute, that the record disclose that the commissioners were sworn to ascertain and report the actual damages or just compensation to be paid under such instructions as shall be given them by the judge or the court. In other words, the record

should show that the court instructed the commissioners to assess the damages in accordance with the provisions of the statute, and that they were sworn to ascertain and report such damages in accordance with such instructions. Upon the subject of instructions the record recites that "now here the court files his instructions to the said commissioners as to their duties herein." The record should embrace the instructions, and it is not sufficient that it merely refers to the fact that instructions were filed. It is essential to a strict compliance with the provisions of that statute that the record disclose what the instructions were to the commissioners, to the end that it may be known as to whether such instructions were in compliance with the provisions of the statute, and that it might be known as to whether or not the commissioners in assessing the damages had complied with the instructions as given them by the court.

We shall not undertake to determine the constitutionality of the act of the General Assembly upon which this proceeding is sought to be maintained. The manifest errors appearing upon the face of the record as herein indicated, respecting the compliance with the provisions of the statute, render it unnecessary to do so. The respondent has no brief filed in this court and when a case is presented which fully complies with the provisions of the statute, and the constitutional question is fully discussed, either orally or by briefs on both sides, it will then be time enough to consider and determine the important question of the constitutionality of this act. It is sufficient now to simply say that in order to maintain this proceeding there must be a strict compliance with every prerequisite of the statute, and the record disclosing that this has not been done in this proceeding, it results in the conclusion that the judgment should be reversed and the cause remanded, and it is so ordered.

All concur.