Gates v. Crandall.

---

E. L. GATES, Appellant, v. AL CRANDALL, Respondent.

**Kansas City Court of Appeals, January 14, 1907.**

1. MUNICIPAL CORPORATIONS: State Law: Restraining Animals: Ordinance. A third-class city has the right to regulate or prohibit the running at large of domestic animals, but such power is not exclusive and does not prevent the State from enforcing within the limits of the city the law relating to the restraining of animals from running at large.

2. RESTRAINING ANIMALS: Statute: Notice: Construction. The statute restraining animals from running at large requires written notice of the restraint and the charges against the impounded stock, and the fact that prior to the impounding the owner knew of the taking and the damages claimed, and by whom, and for what purpose, will not cure the failure to give written notice, since knowledge is not always notice.

3. ———: ———: ———: ———: Agreement as to Damages. Under the amendment of 1891 the record must show not only the owner's knowledge of the taking and by whom and for what purpose and the amount of damages claimed, but also that the officer and the owner cannot agree as to the amount of damages demanded; and the failure to show such want of agreement will entitle the owner to recover the animals in an action of replevin.

4. ———: ———: ———: ———: ———. To justify the taking of private property from the owner every statutory requirement must be strictly met; and the compliance should affirmatively appear in the record.

Appeal from Jasper Circuit Court.—*Hon. Hugh Dabbs,*
Judge.

REVERSED AND REMANDED *(with directions).*

*H. J. Green* for appellant.

Where a political division of the State adopts reso-
lutions or by-law prohibiting cattle and other animals
running at large such action excludes from that terri-
tory the operation of a general law on the subject. 2
Cyc., p. 437; Suander v. Wakefield, 84 Ill. App. 426,
25 Tex. 670; 29 Tex. App. 529; State ex rel. v. Bird, 83
S. W. 284.

*W. J. Owen* and *W. R. Robertson* for respondent.

(1) It is also well understood that where the Legis-
lature vests certain powers in the municipal corporation,
and the subject matter is one likewise open for general
legislative control, that such powers given to the munici-
pality will not be deemed exclusive, unless so expressly
named in the act of incorporation. State v. Willard, 39
Mo. App. 254; St. Louis v. Cafferata, 24 Mo. 94; State
v. Wister, 62 Mo. 592; State v. Muir, 86 Mo. App. 642;
State v. Harper, 58 Mo. 530. (2) In case of conflict be-
tween State laws and ordinances, the latter must give
way. 1 Dil., Mun. Cor. (4 Ed.), sec. 367, et seq.; 2 Suth.
Stat. Const. (2 Ed.), sec. 551. (3) Appellant apparently
contends that when section 4777 was amended by the laws
of 1905 at page 47, that the entire stock law was repealed
and before it could become effective again that it was
necessary to resubmit the proposition to the voters as
in the first instance. The law authorizing the vote on
the question of stock running at large stands as it stood
at the date the election was held in Jasper county and
the only change made is as to the manner and method of
enforcing it. State ex rel. v. Pond, 93 Mo. 606; Ex parte
Handler, 176 Mo. 386.

ELLISON, J.—This action is replevin for two cows. The defendant is the constable of Joplin township in Jasper county, and claims the right to retain possession of the cows for costs due him as such constable, which accrued to him in the manner hereinafter stated. The judgment in the trial court was for the defendant constable.

The plaintiff resided in the corporate limits of the city of Webb City in Jasper county and was the owner of the cows. In the month of September, 1905, plaintiff drove the animals to the foot of one of the streets of the city and there turned them loose on the commons within the city limits. There was an ordinance of such city which prohibited owners from allowing live stock to run at large within the city; but it contained a section by way of exception, permitting milk cows to run at large between the hours of five o'clock in the forenoon and eight o'clock in the afternoon in the spring, summer and fall months.

Prior to ordaining this ordinance, Jasper county had adopted the stock law restraining domestic animals from running at large as is provided for in chapter 69, article 2, Revised Statutes 1899. Section 4777 of that law, as amended by Session Acts of 1905, p. 47, made it the duty of the constable of the township to restrain any domestic animal found running at large and "within three days give notice thereof to the owner, if known, in writing, stating therein the amount of compensation for feeding and keeping such animal or animals and damages claimed, and thereupon the owner shall pay the . . . officer taking up such animal a reasonable compensation for feeding," etc. The defendant being constable of the township in which Webb City is situated, took up and restrained the animals in controversy.

Plaintiff contends that the ordinance of Webb City restraining domestic animals from running at large within the city, but permitting milk cows to run at large

in certain months, superseded and excluded the general State law forbidding such animals from running at large at any time. The charter of cities of the third class, to which the city in question belongs (Section 5836, Revised Statutes 1899, amended in Laws 1901, p. 62) empowers such cities to "regulate or prohibit the running at large of" domestic animals and fowls. But such charter does not grant an *exclusive* right or authority to do so. The mere grant of a power to a municipality, with no words clearly showing an intention to make such power exclusive, will not exclude the general State law. The effect of such grant of power is to give the State and municipal government concurrent jurisdiction. [Harrison v. State, 9 Mo. 530; Baldwin v. Green, 10 Mo. 410.] Recently, in State v. Kessells, 120 Mo. App. 233, 96 S. W. 494, we discussed this question and now refer to that case where authorities, in addition to those just cited, will be found. While the Legislature could have surrendered its right to regulate or prohibit animals running at large in cities of the third class, it should not be held to have done so in the absence of language requiring such holding. The evident meaning of the general statute, construed in connection with the charter of cities of the third class, is to leave such cities and the State with concurrent jurisdiction.

But, while the State had the right to enforce its law within the limits of cities of the third class, yet the agreed statement of facts upon which this case was submitted, discloses that the judgment rendered is without support and must therefore be reversed. The statute, above quoted, requires the constable when he restrains animals found at large to give written notice to the owner within three days, stating the amount of his claim for costs, etc. This, it is agreed, was not done; and it is made special matter of complaint in the motion for new trial. But the agreed statement of facts further sets

123 App—27

out that prior to putting the animals in the pound plaintiff knew "of the taking up of the cattle, the amount of the damages claimed and by whom they were taken up and for what purpose and what rights defendant claimed therein." We do not regard that as sufficient to justify the constable. Knowledge is not always notice. The statute provides the right to detain and sell another's property against his will and its provisions granting this extraordinary power should be complied with. In exercising such authority over the property of another when written notice is required, verbal notice, or actual knowledge, will not suffice any more than would knowledge of the filing of a petition in court dispense with the service of a summons, or an order of publication. [Green v. Meyers, 98 Mo. App. 438, 444.]

It is true that by an additional section, enacted since the original statute (Laws 1901, p. 45, section 4777a), it is provided that "If it shall appear and be proven on trial that the owner or owners of such domestic animals, as set forth in section 4777, shall have actual notice that his or their said animals or stock were restrained, and by whom, and that the parties interested could not agree on the amount of damages demanded, then the three days' notice in writing as required by section 4777 shall not be necessary to a recovery." While it appears, as above stated, that plaintiff knew his cattle were taken up, and by whom, and for what purpose and the amount of damages claimed, it does not appear anywhere in the record that the parties "could not agree on the amount of damages demanded." That fact was made a statutory condition to the omission of a notice in writing. To justify taking private property from the owner, every statutory requirement must be strictly met. The Supreme Court said that "It is common learning that, where private property is to be taken against the will of the owner under statute authority, all the statute requirements must be fully and strictly complied

with. In the procedure no step, however unimportant seemingly, must be omitted, nor will the substitution of other steps, in the place of those named in the statute, be sufficient. To deprive the citizen of his property requires the whole statute, and nothing in the place of the statute." [In re Bledsoe Hill, 200 Mo. 630, 98 S. W. 631.]

In the construction of railroads where material was taken from the landowner, the statute provided that if the parties could not agree on the amount of the damage, three householders were to be appointed to fix such damage; and it was held that it was necessary for the record to affirmatively show a failure to agree, otherwise the proceedings would be void. [Cunningham v. Railroad, 61 Mo. 33.] So where the statute provided for condemnation of land when the parties "cannot agree on the proper compensation to be paid" to the owner, it was held necessary for the record to state that they could not agree. [Railroad v. Campbell, 62 Mo. 585.] So, also, where the statute contemplated that the commissioner should confer with the landowner to ascertain if he would relinquish a right of way over his land to a railway company, it was held that the record should affirmatively show the owner refused him a relinquishment. [Railroad v. Young, 96 Mo. 39, 43.] In Williams v. Kirby, 169 Mo. 622, the proceeding was to condemn land for levee purposes, the Supreme Court said that it had "been uniformly held by this court, in proceedings to condemn private property for public use, that unless it affirmatively appear upon the face of the proceedings that every essential prerequisite of the statute conferring the authority has been complied with, such proceedings will be void." The same rule has likewise been laid down in public road cases. [Anderson v. Pemberton, 89 Mo. 61; Zimmerman v. Snowden, 88 Mo. 218; Whitely v. Platte Co., 73 Mo. 30; Jefferson City v. Cowan, 54 Mo. 234.]

In the case at bar in order that the party taking the

property may excuse himself from giving a written notice, he must make it appear at the trial that the parties could not agree on the amount of the damages. This was not done. The owner may know that his property has' been seized and by whom and the damage claimed and yet may never have been given an opportunity to confer and agree with his adversary.

There were several other matters presented which, in view of what we have written, need not be decided and have not been considered. Among them was a question whether the stock law had been legally adopted in Jasper county.

The judgment is reversed and cause remanded with directions to render judgment for the plaintiff. All concur.